IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LYNDA EZER AS TRUSTEE OF THE MICHAEL RYAN FEAGIN 2007 TRUST, THE MICHAEL RYAN FEAGIN 2007 TRUST, and MICHAEL RYAN, FEAGIN INDIVIDUALLY AND AS A BENEFICIARY OF THE MICHAEL RYAN FEAGIN 2007 TRUST, | § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-13-1805 |
| TEXAS TOWER LIMITED and TEXAS COMMERCE BANK n/k/a JPMORGAN CHASE BANK, N.A., | § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Ryan Feagin, individually and as beneficiary of the Michael Ryan Feagin 2007 Trust ("Feagin"), brought this action against defendants Texas Tower Limited ("Texas Tower") and Texas Commerce Bank n/k/a JPMorgan Chase Bank, N.A. ("Chase") in the 164th Judicial District Court of Harris County, Texas, where it was filed under Cause No. 2013-028233. Texas Tower removed the action to this court. Pending before the court is Defendant Texas Tower Limited's Motion for Summary Judgment ("Motion for Summary Judgment") (Docket Entry No. 27). For the reasons explained below, Texas Tower's Motion for Summary Judgment will be granted.

# I.  Background

This case concerns a lease agreement entered into in 1970 ("Lease Agreement").[1]  The parties are the successors-in-interest to the original parties to the Lease Agreement.

## A.   Undisputed Facts

Charles D. Milby, individually and as trustee of the Charles D. Milby Trust, owned two lots of downtown Houston real estate on the corner of Texas Avenue and Travis Street, identified as Lots 9 and 10 on Block 68.[2]  On March 31, 1970, Charles D. Milby and Louise Milby Feagin, each individually and as trustees, leased Lots 9 and 10 to Howard W. Horne, as trustee, for seventy-five years.[3] Howard W. Horne assigned the lessee's rights and obligations under

---

[1]Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 9; see also Short Form Lease Agreement, Exhibit A-2 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 64.  Page citations are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document.

[2]Plaintiffs' First Amended Petition ("First Amended Petition"), Docket Entry No. 26, pp. 2-3 ¶¶ 11, 13; Defendant Texas Tower Limited's Original Answer to Plaintiffs' Corrected First Amended Complaint (Docket No. 26) and TTL's Third Amended Counterclaim ("Answer"), Docket Entry No. 28, p. 3 ¶¶ 11, 13.

[3]First Amended Petition, Docket Entry No. 26, pp. 2-3 ¶¶ 11-12; Answer, Docket Entry No. 28, p. 3 ¶¶ 11-12; Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 9.

the Lease Agreement to Texas Commerce Bank the same day.[4]   On
December 7, 1970, Charles D. Milby and Louise Milby Feagin, as
trustees, assigned the lessors' rights and obligations under the
Lease Agreement to Charles D. Milby and Louise Milby Feagin as
individuals.[5]   The lessors' rights and obligations were later
assigned to Charles D. Milby, as trustee of the Charles D. Milby
Management Trust, and Charles D. Milby, Jr., as trustee of both the
Luisa Milby Feagin Trust and the Michael Ryan Feagin Trust.[6]   The
interests were then assigned to the current lessors:  the Charles
Dow Milby Family Partnership, Ltd., William R. Buyere, as trustee
of the Luisa Milby Feagin 2007 Trust, and Lynda J. Ezer, as trustee
of the Michael Ryan Feagin 2007 Trust.[7]

    Texas  Commerce  Bank  built  a  massive  multi-use  building,
including a parking garage, that covers the entirety of Block 68,

---

[4]Assignment of Lease and Assumption of Lease Obligations,
Exhibit A-4 to Motion for Summary Judgment, Docket Entry No. 27-1,
p. 79; see also First Amendment to Lease Agreement, Exhibit A-6 to
Motion for Summary Judgment, Docket Entry No. 27-1, p. 90.

[5]Assignment of Lease, Exhibit A-5 to Motion for Summary
Judgment, Docket Entry No. 27-1, p. 87.

[6]Affidavit of Chanse L. McLeod, Exhibit A to Motion for
Summary Judgment, Docket Entry No. 27-1, p. 5 ¶ 8; see also First
Amendment to Lease Agreement, Exhibit A-6 to Motion for Summary
Judgment, Docket Entry No. 27-1, p. 90.

[7]Affidavit of Chanse L. McLeod, Exhibit A to Motion for
Summary Judgment, Docket Entry No. 27-1, p. 5 ¶ 8; see also First
Amendment to Lease Agreement, Exhibit A-6 to Motion for Summary
Judgment, Docket Entry No. 27-1, p. 90; Second Amendment to Lease
Agreement, Exhibit A-7 to Motion for Summary Judgment, Docket Entry
No. 27-1, p. 94.

including Lots 9 and 10.[8]  Texas Commerce Bank later merged with Chase.[9]  On September 14, 2009, Chase assigned the lessee's rights and obligations under the Lease Agreement to Texas Tower.[10]  Texas Tower executed a mortgage on the property the same day.[11]  Under the terms of the Lease Agreement, the lessees are required to provide the lessors with certain documents when an assignment or mortgage is executed.[12]

Article III of the Lease Agreement provided for initial lease payments of $60,000 per year, with payments to increase each year based on a formula derived from the consumer price index.[13]  Article XXII of the Lease Agreement provided three options for the lessee

---

[8]First Amended Petition, Docket Entry No. 26, p. 3 ¶ 14; Answer, Docket Entry No. 28, p. 3 ¶ 14.

[9]First Amended Petition, Docket Entry No. 26, p. 3 ¶ 11; Answer, Docket Entry No. 28, p. 3 ¶ 11.

[10]First Amended Petition, Docket Entry No. 26, p. 4 ¶ 19; Answer, Docket Entry No. 28, p. 4 ¶ 19; Motion for Summary Judgment, Docket Entry No. 27, p. 6 ¶ 1; Assignment of Ground Lease, Exhibit A-8 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 110-22; Deed, Exhibit A-9 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 124-35.

[11]First Amended Petition, Docket Entry No. 26, p. 4 ¶ 21; Answer, Docket Entry No. 28, p. 4 ¶ 21; Deed of Trust, Security Instrument and Fixture Filing, Exhibit C to Response, Docket Entry No. 32-3, p. 15.

[12]Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 35, 39.  The specific documentation and form of notice required is discussed in detail in § III.B.2 below.

[13]Plaintiffs First Amended Petition, Docket Entry No. 26, p. 3 ¶ 16; Answer, Docket Entry No. 28, p. 3 ¶ 16; Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 18-21.

"to purchase the leased premises and Lessor's interest in all improvements thereon" upon the occurrence of certain events.[14]

First, the lessee had the option to purchase the property on "[t]he last day of the lease year in which the base annual rental paid . . . shall first equal or exceed $90,000."[15] There is no indication in the record that this option was ever exercised.

Second, the lessee could purchase the property on "[t]he last day of the lease year in which the base annual rental paid . . . shall first equal or exceed $150,000."[16] In 1995, Texas Commerce Bank sought to exercise the second purchase option.[17] Under the terms of the Lease Agreement, the lessors had the option "to elect not to sell to Lessee pursuant to the terms of" the second purchase option.[18] However, if the lessors elected not to sell, the Lease Agreement provided that "the base annual rental shall thereafter be

---

[14]Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 54–59.

[15]Id. at 54.

[16]Id.

[17]First Amendment to Lease Agreement, Exhibit A-6 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 90–92. Although Plaintiffs First Amended Petition alleges that "Chase sought to exercise the purchase option" in 1998, the First Amendment to Lease Agreement dated October 18, 1995, deals specifically with the second purchase option and states that lessor's exercised their option not to sell by letter dated October 18, 1995. See First Amended Petition, Docket Entry No. 26, p. 3 ¶ 17; First Amendment to Lease Agreement, Exhibit A-6 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 90; see also Answer, Docket Entry No. 28, p. 3 ¶ 17; Response, Docket Entry No. 32, p. 14.

[18]Lease Agreement, Docket Entry No. 27-1, p. 56.

at the rate of $150,000 until th[e] lease terminates."[19]   The lessors exercised their option not to sell and annual rents were thereafter fixed at $150,000 per year.[20]

The third purchase option provided that the lessee could purchase the property at the end of the lease term:

> At the expiration of the seventy-five (75) year term of th[e] Lease Agreement . . . Lessee shall have the option to purchase the leased premises and all improvements thereon . . . paying therefor in cash the fair market value of the leased premises (such value to be calculated as if the leased premises were vacant and there were no improvements or excavations thereon . . . . In order to exercise such option, Lessee must give Lessor written notice of his exercise of such option at least 60 days prior to the date of the expiration of the term of the lease.[21]

By its terms, the third purchase option cannot be exercised until March 31, 2045, at the expiration of the lease.

## B.   Procedural History

Feagin's original state court petition sought a declaratory judgment that the options to purchase the property were void ab initio under the Texas rule against perpetuities, in addition to alleging causes of action for breach of contract and conversion.[22]

---

[19]Id.

[20]First Amendment to Lease Agreement, Exhibit A-6 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 90-91.

[21]Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 57.

[22]Plaintiff's Original Petition, Attachment B to Corrected Notice of Removal, Docket Entry No. 2-1, pp. 15-18 ¶¶ 19-33.

Texas Tower removed the action to this court on June 21, 2013.[23]
On June 26, 2013, Texas Tower filed an answer.[24]

On July 1, 2013, Texas Tower filed a motion for partial summary judgment on Feagin's conversion claim.[25] On July 23, 2013, Plaintiffs Lynda Ezer as Trustee of the Michael Ryan Feagin 2007 Trust, The Michael Ryan Feagin 2007 Trust, and Michael Ryan Feagin, individually and as a beneficiary of the Michael Ryan Feagin 2007 Trust (collectively "Plaintiffs") filed their First Amended Petition.[26] Plaintiffs filed an amended version of their First Amended Petition on October 28, 2013, adding Lynda Ezer to the Parties section of their pleading.[27] Because the First Amended Petition eliminated the conversion claim, Texas Tower's motion for partial summary judgment was rendered moot.[28]

---

[23]Notice of Removal, Docket Entry No. 1; Corrected Notice of Removal, Exhibit 1 to Notice of Filing Corrected Notice of Removal, Docket Entry No. 2-1, p. 2. Chase consented to removal. Corrected Notice of Removal, Exhibit 1 to Notice of Filing Corrected Notice of Removal, Docket Entry No. 2-1, p. 5 ¶ 11; Consent to Removal, Attachment G to Corrected Notice of Removal, Exhibit 1 to Notice of Filing Corrected Notice of Removal, Docket Entry No. 2-1, p. 125.

[24]Defendant Texas Tower Limited's Original Answer to Plaintiff's Original Petition and Original Counterclaim, Docket Entry No. 4.

[25]Defendant Texas Tower Limited's Motion for Partial Summary Judgment, Docket Entry No. 6.

[26]Plaintiffs First Amended Petition, Docket Entry No. 19.

[27]First Amended Petition, Docket Entry No. 26.

[28]Order, Docket Entry No. 35.

On November 8, 2013, Texas Tower filed its answer to Plaintiffs' First Amended Petition.[29] Texas Tower also brought a counterclaim seeking a declaratory judgment that the "options to purchase contained in the Lease are valid and are not subject to the rule against perpetuities."[30]

On November 4, 2013, Texas Tower filed the pending Motion for Summary Judgment.[31] Plaintiffs filed a response on December 9, 2013.[32] On December 20, 2013, Texas Tower filed a reply.[33]

## II.   Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a matter of

---

[29]Defendant Texas Tower Limited's Original Answer to Plaintiffs' Corrected First Amended Complaint (Docket No. 26) and TTL's Third Amended Counterclaim, Docket Entry No. 28.

[30]Answer, Docket Entry No. 28, p. 13 ¶ 70.

[31]Motion for Summary Judgment, Docket Entry No. 27.

[32]Plaintiffs' Response to Defendant, Texas Tower Limited's Motion for Summary Judgment ("Response"), Docket Entry No. 32.

[33]Defendant Texas Tower Limited's Reply to Plaintiffs' Response to TTL's Motion for Summary Judgment ("Reply"), Docket Entry No. 34.

law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

### III.  **Analysis**

Plaintiffs seek a declaratory judgment that the purchase options contained in Article XXII of the Lease Agreement are void under the Texas rule against perpetuities.[34] Plaintiffs allege that because the second purchase option was void <u>ab initio</u>, Texas Tower breached the lease by paying rent at the rate of $150,000 per year instead of an amount calculated in accordance with the formula provided in Article III of the Lease Agreement.[35] Plaintiffs further allege that Texas Tower breached the Lease Agreement by failing to provide them with copies of the 2009 Assignment of Ground Lease and the mortgage.[36] Texas Tower has moved for summary judgment on all of Plaintiffs' claims.

**A.   Rule Against Perpetuities**

Plaintiffs seek a "declaratory judgment that both Article XXII and Article XXII B of the Lease [Agreement] are void <u>ab initio</u> because they violate Article I, Section 26 of the Texas Constitution, which sets forth the Texas rule against

---

[34]First Amended Petition, Docket Entry No. 26, pp. 4-7 ¶¶ 22-27.

[35]<u>Id.</u> at 7 ¶¶ 32-33.

[36]<u>Id.</u> at 7-8 ¶¶ 30-31.

perpetuities."[37]   Texas Tower argues that "the rule against perpetuities does not apply to options to purchase appendant to leasehold interests."[38]   The court agrees with Texas Tower.

> The Restatement (First) of Property provides that
>
> [w]hen a lease limits in favor of the lessee an option exercisable at a time not more remote than the end of the lessee's term
>
>> (a) to purchase the whole or any part of the leased premises; or
>>
>> (b) to obtain a new lease or an extension of his former lease,
>
> then such option is effective, in accordance with the terms of the limitation, even when it may continue for longer than the maximum period described [by the rule against perpetuities].

Restatement (First) of Property § 395 (1944).   Both parties acknowledge that the Texas Supreme Court has not yet addressed the Restatement's exception to the rule against perpetuities for a lessee's option to purchase the leased premises.[39]   However, "[a]lthough [the Texas] Supreme Court has not expressly adopted the provisions of the Restatement of the Law of Property . . . the [c]ourt frequently looks to these provisions for guidance in construing particular interests in property." Deviney v. NationsBank, 993 S.W.2d 443, 449 n.5 (Tex. App.—Waco 1999, pet.

---

[37]Id. at 5 ¶ 24.

[38]Motion for Summary Judgment, Docket Entry No. 27, p. 17 ¶ 32.

[39]Id. at 18 n.36; Response, Docket Entry No. 32, p. 15.

denied).  Moreover, the exception appears to be the majority rule
in the United States.  <u>See, e.g.</u>, <u>Citgo Petroleum Corp. v. Hopper</u>,
429 S.E.2d 6, 8 & n.2 (Va. 1993) (collecting cases holding that the
rule against perpetuities does not apply to a purchase option "that
is appendant to a long-term commercial lease" and noting only two
cases "that express a contrary view").

The Restatement's exceptions for a lessee's option to purchase
the premises or obtain renewal of the lease are premised on the
policy that "[a] lessee in possession of lands, especially when the
term is sufficiently long to make a question as to the rule against
perpetuities possible, needs to be able so to plan for the future
as to get the benefits of the full utilization of the land during
his lease-term."   Restatement (First) of Property § 395 cmt. a
(1944).  "This makes it important for such a lessee and for society
in general, that extensions or renewals of the term and purchase of
the lessor's ownership be facilitated rather than prohibited."  <u>Id.</u>
Declaring a lessee's option to purchase void would frustrate the
lessee's incentive to place the property fully into commerce.  <u>Cf.</u>
<u>Kettler v. Atkinson</u>, 383 S.W.2d 557, 560 (Tex. 1964) ("The purpose
of the rule is to prevent the taking of the subject matter of the
perpetuity out of commerce or trade for the prohibited period.").
As explained in <u>Elkins v. Sears, Roebuck & Co.</u>, No. H-04-4629, 2008
WL 2465344 (S.D. Tex. June 17, 2008),

> In the common case in modernity, the holder of the option
> to buy is not also the holder of the possessory interest.

> The occupier is frustrated:   The more he improves the
> land, the more likely the option holder will be to
> exercise it.   The law evolved to limit this sort of
> perverse incentive.

Id. at *3.

However, "[w]hen the tenant holds the option to purchase, the

tenant has the incentive to put the land fully into commerce --

including additional construction as has happened here -- because

he has the opportunity to buy the results of his investment at a

price that was set before he improved it."   Id.   The court in

Elkins concluded that "[w]hen the transaction as a whole is

considered, the rule against perpetuities is not implicated,"

reasoning that

> [i]n the case of an option in a lease, the holders of all
> interests are always identifiable, and they can
> re-negotiate their positions between themselves or with
> strangers.   Everything [is] held by actual, present
> parties who [can] freely alienate their portion as they
> wish[].   The land is always available to be applied to
> its most valued use.

Id.   The court finds the reasoning in Elkins persuasive.

In addition, at least one Texas appellate court has adopted a

rule consistent with the Restatement's exception for a lessee's

option to renew a lease despite the rule against perpetuities,

relying on reasoning similar to that in Elkins.   See Hull v. Quanah

Pipeline Corp., 574 S.W.2d 610, 612 (Tex. Civ. App.—San Antonio

1978, writ ref'd n.r.e.).   In Hull, the court observed that

> [a]lthough there is some contrary authority, the
> generally accepted view is that a provision clearly
> giving the lessee and his assigns the right to perpetual

renewals is valid in the absence of some statutory prohibition, and will be enforced by the courts, although such a provision in a lease is not favored by the courts, and a lease will be construed as not making such a provision unless it does so clearly. It has been generally held that a provision in a lease for perpetual renewal is not violative either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended. The reason for this is that the covenant to renew may be taken as part of the lessee's present interest. It is obvious that a perpetual lease, or a lease containing a covenant for perpetual renewal, is not a restraint or limitation upon the power of alienation of the fee, for there are at all times persons in being who, by joining, can convey the fee.

Id. (quoting 50 Am. Jur. 2d Landlord and Tenant § 1169 (1970)) (internal quotation marks omitted); see also Philpot v. Fields, 633 S.W.2d 546, 548 (Tex. App.—Texarkana 1982, no writ) ("It appears that the parties intended to create a perpetual right to lease the land. When the parties' intent is made clear, courts should enforce the agreement as written, even though perpetual rights are not favored."). The rationale behind the Restatement's exception for a lessee's option to renew the lease applies equally to a lessee's option to purchase the leased premises. See Restatement (First) of Property § 395 cmt. a (1944).

Because the Texas Supreme Court has not yet addressed the Restatement's exception for a lessee's option to purchase the leased premises, the court must make an Erie guess. St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc., 193 F.3d 340, 345 (5th Cir. 1999). In light of the policy behind the exception, the fact that at least one Texas Court of Appeals has adopted a rule

consistent with its rationale, and the fact that the exception is the majority rule in the United States, the court concludes that the exception applies to the Texas rule against perpetuities.[40]

_____

[40]Plaintiffs contend that the third purchase option would not fall within the Restatement's exception because it is "exercisable, at the earliest, 'at' the expiration of the Lease, and at the latest, after the expiration of the lease on an 'other closing date mutually acceptable to Lessor and Lessee.'" Response, Docket Entry No. 32, pp. 17-18 (quoting Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 57). However, the Lease Agreement is clear that the third purchase option is exercisable "at the expiration of the seventy-five (75) year term of th[e] Lease Agreement" and that in order to exercise the option the "Lessee must give Lessor written notice of his exercise of such option at least 60 days prior to the date of the expiration of the term of the lease." Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 57. Plaintiffs refer to language in the Lease Agreement providing that "[i]f the aforesaid option is exercised, Lessor will deliver to Lessee on said expiration date (or other closing date mutually acceptable to Lessor and Lessee) a general warranty deed conveying all of the leased premises." Id. As Texas Tower points out, however, under the plain language of the Lease Agreement, although the deed might be delivered at a date after the expiration of the lease, the option must be exercised at expiration. Reply, Docket Entry No. 34, p. 19 ¶ 27. The Restatement's exception applies to "an option exercisable at a time not more remote than the end of the lessee's term." Restatement (First) of Property § 395 (1944). Accordingly, the court concludes that the exception applies to the third purchase option.

Plaintiffs also contend that because the option allows the lessee to purchase "the leased premises and all improvements thereon," and under the terms of the Lease Agreement the lessee owns the improvements "until termination of the Lease Agreement," the option cannot be exercised until after termination of the lease. Response, Docket Entry No. 32, pp. 17-21; Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 12; Short Form Lease Agreement, Exhibit A-2 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 65. However, the Lease Agreement unambiguously provides that the option is to be exercised "at the expiration" of the lease. Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 57. This is

(continued...)

Accordingly, Texas Tower is entitled to summary judgment on Plaintiffs' claim that the second and third purchase options are void under the Texas rule against perpetuities.

## B.   Breach of Contract

### 1.   Lease Payments

Plaintiffs contend that "because [the second purchase] option was void ab initio and could not be ratified [there] has never been any mechanism to freeze the Lease payments at $150,000 per year."[41] Plaintiffs argue that "[t]he yearly increases set forth in Article III therefore still apply" resulting "in a significant underpayment" by Texas Tower that constitutes a breach of the Lease Agreement.[42]

However, as explained in § III.A above, the second purchase option was valid.  Accordingly, Texas Tower did not breach the Lease Agreement by continuing to pay the $150,000 annual rent provided for by Article XXII and the First Amendment to Lease

---

[40](...continued)
consistent with the language of the Restatement, requiring exercise "at a time not more remote than the end of the lease's term." Restatement (First) of Property § 395 (1944).  There is no indication that the option cannot be exercised at the same time that the lease expires -- as that is the scenario contemplated by the Lease Agreement and the Restatement.

[41]First Amended Petition, Docket Entry No. 26, p. 7 ¶ 32.

[42]Id. ¶¶ 32-33.

-16-

Agreement.[43]  Texas Tower is therefore entitled to summary judgment
on Plaintiffs' claim that it breached the lease by paying rent at
the rate of $150,000 per year.

### 2.  Failure to Provide Documents

Plaintiffs allege that "Chase and/or [Texas Tower] breached
the Lease by failing to provide a copy of the assignment between
Chase and [Texas Tower] to Less[ors] in violation of Article VIII
of the Lease."[44]   Plaintiffs  further  allege  that  Texas  Tower
"breached the Lease by failing to provide a copy of its mortgage
. . . in violation of Article X of the Lease."[45]

--------

[43]See Lease Agreement, Exhibit A-1 to Motion for Summary
Judgment, Docket Entry No. 27-1, p. 56; First Amendment to Lease
Agreement, Exhibit A-6 to Motion for Summary Judgment, Docket Entry
No. 27-1, p. 90.

[44]First Amended Complaint, Docket Entry No. 26, p. 7 ¶ 30.

[45]Id. ¶ 31.  Plaintiffs allege in their Response that the
mortgage entered into by Texas Tower does not conform to the
requirements of the Lease Agreement and that "Plaintiffs will seek
leave to amend their Petition to challenge the non-conforming
mortgage."  Response, Docket Entry No. 32, p. 9.  However,
Plaintiffs have not sought such leave and more than seven months
have passed since Plaintiffs filed their Response.  "Plaintiffs
cannot avoid summary judgment, however, based on unpleaded claims."
Jacobs v. Tapscott, No. 3:04-CV-1968-D, 2006 WL 2728827, at *8
(N.D. Tex. Sept. 25, 2006), aff'd, 277 F. App'x 483 (5th Cir.
2008); see also De Francheschi v. BAC Home Loans Servicing, L.P.,
No. 3:09-CV-1667-K, 2011 WL 1456849, at *4 (N.D. Tex. Apr. 14,
2011), aff'd, 477 F. App'x 200 (5th Cir. 2012).  Plaintiffs also
argue that any failure to provide a copy of the mortgage is a
material breach because the mortgage allegedly does not conform to
the requirements of the Lease Agreement.  Response, Docket Entry
No. 32, pp. 8-9; see also First Amended Petition, Docket Entry No.
27, pp. 7-8, 31, 35.  However, as explained in more detail below,
(continued...)

With regard to the assignment, Article VIII of the Lease Agreement provides that "Lessee shall have the right freely to assign Lessee's interest in the leasehold estate . . . provided that . . . the assignee expressly assumes all then existing and future liabilities and obligations of Lessee under the lease, and Lessee furnished to Lessor a copy of such instrument of assignment and assumption as herein provided."[46] With regard to the mortgage, Article X of the Lease Agreement provides that "[i]n the event Lessee, during the term of this lease, should mortgage or otherwise encumber its leasehold estate . . . Lessee shall give Lessor written notice of the same and the name and address of the mortgagee."[47] Plaintiffs allege that failure to provide the referenced documents has "triggered Article IX of the Lease which,

---

[45](...continued) the Lease Agreement does not require the lessee to provide a copy of the mortgage.  See Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 39.  Rather, the lessee must provide "written notice" of the mortgage "and the name and address of the mortgagee."  Id.  Plaintiffs contend that had they "been given proper notice of the mortgage before it was entered into, they may have been able to ensure that the mortgage conformed with the Lease [Agreement]."  Response, Docket Entry No. 32, p. 9. However, as explained below, Plaintiffs were aware in 2009 that a mortgage was to be executed and Texas Tower was entitled to sixty days after notice of any default to cure the default.  See Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 36-39; Lessor Estoppel and Agreement, Exhibit A-11 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 174.

[46]Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 35.

[47]Id. at 39.

-18-

if the breaches are not corrected in sixty days, gives Lessees the option to terminate the Lease and obtain full ownership of the Building."[48]

Texas Tower argues that any breach was not material as a matter of law because "Plaintiffs were well aware of the 2009 transaction, and even provided a Lessor Estoppel and Agreement signed on July 22, 2009, in connection with the sale."[49]   Texas Tower further argues that it is entitled to summary judgment on Plaintiffs' claims because Plaintiffs did not provide Texas Tower with notice and an opportunity to cure the alleged breaches,[50] pointing to the following language in Article IX of the Lease Agreement:

> [I]f Lessee should fail to perform any covenant imposed upon Lessee hereunder which does not involve the payment of liquidated sums of money and if such default shall continue for a period of 60 days after notice of said default has been given to Lessee (with a copy of said notice being mailed to any mortgagee or trustee of Lessee for whom a mailing address has theretofore been left with Lessor for such purpose as hereinafter provided), Lessor may, at Lessor's election, declare this lease cancelled and terminated . . . .[51]

---

[48]First Amended Petition, Docket Entry No. 26, p. 7 ¶ 34.

[49]Motion for Summary Judgment, Docket Entry No. 27, p. 16 ¶ 30 & n.29.

[50]Id. at 16-17 ¶¶ 30-31.

[51]Lease Agreement, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 27-1, pp. 36-37.

Texas Tower alleges that "Plaintiffs never sent a notice of default as required by the Lease" and that "the first time [Texas Tower] was made aware of these alleged 'breaches' was when Plaintiffs filed their 'First Amended Petition' on July 23, 2013."[52]   Texas Tower contends that "[a]lthough an amended complaint is clearly not the type of notice of default contemplated by the Lease [Agreement], that same day, counsel for [Texas Tower] provided copies of the Assignment and Deed of Trust to counsel for Plaintiffs," thus curing any default within sixty days of having received notice.[53]

Plaintiffs acknowledge that Article IX is a "notice and cure provision" but argue that "[a] plaintiff is not required to comply with a notice and cure provision when doing so would be futile."[54] Plaintiffs rely on Cheung-Loon, LLC v. Cergon, Inc., 392 S.W.3d 738 (Tex. App.—Dallas 2012, no pet.).[55]   However, the facts of Cheung-

---

[52]Motion for Summary Judgment, Docket Entry No. 27, p. 16 ¶ 31.

[53]Id.

[54]Response, Docket Entry No. 32, p. 8.

[55]Id.   Plaintiffs also cite Ciena Corp. v. Nortel Networks Inc., No. 2:05 CV 14, 2005 WL 1189881, at *7 (E.D. Tex. May 19, 2005), which held that compliance with a notice and cure provision is excused under California law when it would have been futile. Response, Docket Entry No. 32, p. 8.   Neither party contends that California law applies in this case.   See First Amendment to Lease Agreement, Exhibit A-6 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 91; Second Amendment to Lease, Exhibit A-7 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 96; Assignment of Ground Lease, Exhibit A-8 to Motion for Summary Judgment, Docket
(continued...)

Loon militate against a finding that compliance with the Lease Agreement's notice and cure provision would have been futile in this case.

The lease in Cheung-Loon contained a provision "requiring [the lessee] to provide [the lessor] with written notice of any default and a thirty-day opportunity to cure before pursuing legal remedies." Id. at 741. Believing the lessor to be in default under the terms of the lease, the lessee "ceased paying rent under the lease." Id. at 742.

The lessor brought suit for breach of contract. Id. The lessee brought a counterclaim for breach of contract and moved for summary judgment, arguing that the lessor's "breach of the agreement allow[ed the lessee] the right to rescind." Id. at 743. The lessor "filed a no-evidence summary judgment" on the lessee's counterclaim, arguing that rescission "could not be justified by any alleged breach on its part because [the lessee] did not provide it . . . with written notice of a failure to perform and a thirty day opportunity to cure." Id.

The trial court denied the lessor's motion and granted summary judgment to the lessee. The appellate court reversed, noting that "[i]n addition to showing that [the lessor] breached the lease, [the lessee] bore the burden of showing that all conditions

---

[55](...continued)
Entry No. 27-1, p. 111.

precedent to [its] recovery under the contract were satisfied."
Id. at 744-45.  The court held that "absent a repudiation by [the
lessor], [the lessee] was required to provide it . . . with notice
of the alleged default and an opportunity to cure." Id. at 745.

The lessee argued that "it was unnecessary . . . to provide
notice of default because any such notice would have been futile."
Id. at 745.  However, the lessee "introduced no evidence . . . of
any conduct by [the lessor] occurring before [the lessee]
terminated the lease that would indicate the futility of a demand
for performance." Id.  The court therefore concluded that because
the lessee "failed to provide any evidence that [it] met the
conditions precedent to recovery under the contract as a matter of
law, the trial court erred both in granting summary judgment for
[the lessee] . . . and in failing to grant a no-evidence summary
judgment in favor of [the lessor]." Id.

Here, Plaintiffs have not produced any evidence that they
provided notice of any alleged breach to Texas Tower.  Cf. Racko
Properties, Inc. v. Alabama Great S. R.R. Co., No. 07-2898, 2008 WL
1788841, at *4 (E.D. La. Apr. 17, 2008) ("[N]otice and cure
requirements are entitled to no less deference than the obligations
imposed upon the lessee.").  Instead, like the lessee in Cheung-
Loon, Plaintiffs argue that they were "not required to comply with

a notice and cure provision when doing so would be futile."[56] However, Plaintiffs have produced no evidence to "indicate the futility of a demand for performance." 392 S.W.3d at 745. Indeed, the summary judgment evidence indicates that Texas Tower provided the Assignment of Ground Lease and mortgage to Plaintiffs immediately after receiving Plaintiffs' First Amended Petition.[57]

Moreover, the summary judgment evidence reflects that Plaintiffs were made aware of the assignment and the mortgage before they were executed. The Lessor Estoppel and Agreement makes certain certifications "to Metropolitan Life Insurance Company (as prospective mortgagee of the interest of Lessee in the Ground Lease . . . and the improvements located on the Leased Premises" and to Texas Tower.[58] The Lessor Estoppel and Agreement further states that it "is being delivered in connection with a prospective assignment of the Lessee's interest in the Ground Lease."[59] The Lessor Estoppel and Agreement was signed by Lynda J. Ezer, as

---

[56]Response, Docket Entry No. 32, p. 8.

[57]Letter from Paul L. Mitchell to Timothy Lankau (July 23, 2013), Exhibit B-1 to Motion for Summary Judgment, Docket Entry No. 27-2, p. 6; E-mail from Paul Mitchell to Timothy Lankau (July 23, 2013, 4:49 PM), Exhibit B-2 to Motion for Summary Judgment, Docket Entry No. 27-2, p. 82.

[58]Lessor Estoppel and Agreement, Exhibit A-11 to Motion for Summary Judgment, Docket Entry No. 27-1, p. 174.

[59]Id. at 177.

Trustee of the Michael Ryan Feagin 2007 Trust.[60]  Plaintiffs were therefore aware that an assignment and mortgage were to be executed and could have provided notice to Texas Tower of any failure to provide a copy of the Assignment of Ground Lease or written notice of the mortgage.[61]

Under Article IX of the Lease Agreement, Texas Tower was entitled to sixty days to cure any default after receiving notice from Plaintiffs.  Because Plaintiffs have produced no evidence that they provided notice, nor any evidence that providing notice would have been futile, Texas Tower is entitled to summary judgment on Plaintiffs' breach of contract claims based on an alleged failure to provide them with a copy of the Assignment of Ground Lease and written notice of the mortgage.[62]

---

[60]Id. at 180.

[61]In addition, attached to Texas Tower's Reply are two letters addressed to the Michael Ryan Feagin 2007 Trust, c/o Lynda J. Ezer, Trustee.  The first, dated July 2, 2009, seeks execution of an estoppel certificate "[i]n connection with a proposed assignment of the ground lease."  Letter from Catherine C. Weir, Jones Day, to Michael Ryan Feagin 2007 Trust (July 2, 2009), Exhibit C-1 to Reply, Docket Entry No. 34-1, p. 5.  The second, dated September 14, 2009, indicates that the lease "has been assigned to Texas Tower" and that "a copy of the fully executed and acknowledged Ground Lease Assignment is enclosed."  Letter from Texas Tower Limited to Michael Ryan Feagin 2007 Trust (Sept. 14, 2009), Exhibit C-2 to Reply, Docket Entry No. 34-1, p. 8.

[62]In their First Amended Petition, Plaintiffs allege that "[a]ny cure of the . . . breaches would need to include a rescission of the sale of the Building to [Texas Tower], and the payment of past due lease payments."  First Amended Petition, Docket Entry No. 26, p. 7 ¶ 34.  However, as explained in § III.B.1
(continued...)

3.   Sale of the Building

Texas Tower argues that it is entitled to summary judgment on Plaintiffs' claim for breach of contract based on an alleged sale of the building.[63]   Texas Tower appears to refer to Plaintiffs' allegation in their First Amended Petition that "Chase breached the Lease by selling the Building because the Lease does not give Less[ees] the right to sell the Building, portions of which are affixed to Less[ors'] land."[64]   In their Response, however, Plaintiffs specifically aver that "this breach allegation is directed at Chase" and that "Plaintiffs will address whatever argument Chase has that it had the right to sell the Building if and when Chase moves for summary judgment."[65]   Plaintiffs have since

---

[62](...continued)
above, there are no "past due lease payments" because the second purchase option was valid pursuant to the Restatement's exception to the rule against perpetuities.  In addition, as explained in more detail in § III.B.3 below, Plaintiffs' allegations regarding the sale of the building are not directed at Texas Tower.  Indeed, Plaintiffs limit their allegations against Texas Tower to the underpayment of rent and the failure to provide "a copy of the assignment" and "a copy of its mortgage."   Id.  ¶¶ 30-33. Accordingly, Plaintiffs' allegation that "[a]ny cure of the . . . breaches would need to include a rescission of the sale of the Building" appear to be directed solely at Chase and are therefore inapplicable to Texas Tower's Motion for Summary Judgment.

[63]Motion for Summary Judgment, Docket Entry No. 27, pp. 9-10 ¶¶ 26-29.

[64]First Amended Complaint, Docket Entry No. 26, p. 7 ¶ 29.

[65]Response, Docket Entry No. 32, p. 7.

settled their claims with Chase.[66]  Because this allegation is not directed at Texas Tower, the court need not decide this issue.

### IV.  Conclusions and Order

For the reasons explained above, the court concludes that Texas Tower is entitled to judgment as a matter of law on all of Plaintiffs' alleged claims for relief.  Accordingly, Defendant Texas Tower Limited's Motion for Summary Judgment (Docket Entry No. 27) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 22nd day of July, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[66]Plaintiffs' Status Report, Docket Entry No. 38; Joint Stipulation of Dismissal with Prejudice of Defendant JPMorgan Chase Bank, N.A., Docket Entry No. 41; Order, Docket Entry No. 42.